UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. |
| v. | : | 3:04-cr-138(JCH) |
| | : | |
| | : | |
| TYRELL EVANS, | : | JANUARY 13, 2009 |
| Defendant. | : | |

**RESPONSE TO REMAND**

**I.    INTRODUCTION**

Pursuant to United States v. Regalado, 518 F.3d 143, 148-150 (2d Cir. 2008), the United States Court of Appeals for the Second Circuit issued a Summary Order, remanding the above referenced case to this court to answer the question of whether the court understood its full discretion under United States v. Kimbrough, 128 S.Ct. 558, 576 (2007), to impose a non-guidelines sentence in the event that it determined that 18 U.S.C. § 3553(a) called for a sentence "at odds with," id. at 576, the sentence indicated by the crack guidelines and defendant's career offender status.  To answer this question, the court held a telephone conference with counsel on October 22, 2008.  It also requested briefing from both parties, which it received on November 4, 2008.  Finally, the court heard oral argument on December 15, 2008.

**II.   DISCUSSION**

    A.    Background

Evans was one of 50 defendants charged in an Indictment returned on April 24, 2004.  Subsequently, Evans pled guilty to one count of conspiracy to distribute and

possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.[1]

B.   Sentencing

At sentencing, on October 6, 2005, the court determined that the base offense level under § 2D1.1(c)(4) was 32, which reflects a quantity of drugs in the range of 50 to 150 grams. Tr. at 64  The court determined that Evans did not qualify for a minor role; therefore, his adjusted offense level was determined to be a 32. Id.  The court then determined that Evans was a career offender, which in his case called for a level 32. Id.  Thus, the offense level and career offender level were the same. Id.  The court next determined, under U.S.S.G. § 3E1.1(a), that Evans accepted responsibility by way of his timely plea agreement and his express statements acknowledging responsibility to the probation officer and the court.[2]  Id. at 65.  As a result, the total offense level was reduced to 30. Id.

In considering Evans' criminal history, the court determined that Evans had four criminal history points, three points pursuant to § 4A1.1(a), and one point pursuant to § 4A1.1(c). Id.  An additional two points were added by the court pursuant to § 4A1.1(d) because Evans committed the instant offense while under a criminal justice

---

[1] On June 5, 2008, pursuant to United States v. Gonzalez, 430 F.3d 111, 115 (2d Cir. 2005), the court issued an amended judgment (Doc. No. 2128) stating that Evans was convicted of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, to reflect that Evans did not admit to a drug quantity at his guilty plea.

[2] The government did not move for the third point, under U.S.S.G. 3E1.1(b), on the ground that the defendant contested the quantity.

2

sentence.  Id.  Thus, Evans had a total of six criminal history points, which placed him in a criminal history category III.  Id.  However, because of the career offender determination, Evans' criminal history rose to a category VI pursuant to § 4B1.1(b).  Id.  With an offense level of 30 and criminal history category VI, the guidelines range was calculated to be 168 to 210 months.  Id.

The court then heard argument from Evans' counsel regarding grounds for possible downward departures from the guidelines range.  Counsel argued that the career offender classification overstated Evans' criminal history.  Id. at 66-8.  Counsel also argued that the crack cocaine 100 to 1 guidelines ratio of crack to powder was unfair and disparate.  Id. at 68-9.  Counsel further argued that Evans' family circumstances, namely his responsibility to his son, justified a downward departure.  Id. at 69.  Finally, Evans' counsel argued that, if each of his articulated grounds did not justify a downward departure on their own, then taken together they certainly did.  Id. at 69-70.  The court then added extraordinary rehabilitation as its own potential ground for departure because Evans was out on bond drug free, for over a year, working a steady 40 hour per week job and complying with his conditions of release.  Id. at 76.

After giving the government an opportunity to resist the downward departure arguments, the court then went through its reasoning on defendant's requests for a downward departure under the guidelines.  First, it stated that, with respect to the 100 to 1 ratio, it was bound by Congress' actions and did not find it a reasonable basis for departure.  Id. at 78. However, the court did choose to grant a departure on the

overstatement of criminal history.  Id.  The court indicated that it was limited in this regard to a horizontal departure to a criminal history category V.  Id. at 79.  In considering the ground of extraordinary rehabilitation, the court found that the ground was not present to an extraordinary degree as required to depart, United States v. Bryson, 163 F.3d 742, 747 (2d Cir. 1998),[3] but taken together with the overstatement of criminal history, the court found that it could depart on this combination of factors pursuant to United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996).  Id. at 81.  The court declined to depart based on family circumstances.  Id. at 82.

After hearing the arguments of counsel regarding possible grounds for departure from the guidelines, the court then analyzed all of the 3553(a) factors, 18 U.S.C. § 3553(a), and determined what it concluded was a fair and just sentence for Evans: 120 months.  Thus, the sentence was both a guidelines-departed and Booker sentence.

In reviewing the sentencing transcript, this court was reminded of the substantial time spent on the issue of determining quantity in connection with the guidelines calculation.  See Tr. at 5-49.  While this issue occupied a substantial period of time at the beginning of the sentencing proceeding, it is absolutely clear to this court that it eventually determined the guidelines range based on Evans' undisputed qualification as a career offender.  While the court departed from the career offender guidelines range, its view of the defendant, before departure, was based on the career offender guideline:

---

[3] In Bryson the Second Circuit stated, "a sentencing judge may exercise discretion and depart from the applicable guideline range in light of a defendant's efforts toward rehabilitation, provided those efforts are extraordinary."  163 F.3d at 747.

it did not finally determine the defendant's guideline based on drug quantity.[4]  It is extremely clear to this court that, at the time, the court and both counsel viewed the career offender guidelines as controlling if, and when, the court found the drug quantity to be 50-150 grams of crack cocaine.  <u>See</u>, <u>e.g.</u>,Tr. at 5/17-21, 9/22-10/1, 10/15-19, 10/21-25, 11/4-5, 29/20-23, 53/4-5, 99/11-12.  It is clear to this court that, after determining quantity and the guidelines range under Chapter Two, it determined the defendant was a career offender and applied the career offender guideline to the defendant for the purposes of the guidelines determination.  It then granted a departure from the career offender offense level, <u>inter</u> <u>alia</u>, Tr. at 81, because it determined that the defendant's career offender status overstated his criminal history.  <u>Id.</u> at 79.

The court's reference to the limit of a one level reduction was a comment by the court to U.S.S.G. § 4A1.3 and made in reference to the guidelines determination.  The court understood at the time that it had the discretion, under <u>Kimbrough</u>, to impose, as it later did, a non-guidelines sentence "in the event it determined that § 3553(a) called for a sentence 'at odds with' the sentence indicated by . . . the (overstated) career offender label."  Summary Order (9/18/08) at 4.  With regard to the determination of the guidelines, as a § 3553(a) factor, the court determined the defendant's guideline based on his career offender status (not his drug quantity) and departed horizontally one level (because it overstated his criminal history and that was what the guidelines permitted

---

[4] The court acknowledges it was in error in doing so.  The guidelines clearly provide that, if the non-career offender guideline of a defendant is equal to the career offender guideline, as was the case here, the non-career offender guideline is applied.  <u>See</u> U.S.S.G. § 4B1.1(b).

(U.S.S.G. § 4A1.3(b)(3)(A))).  It eventually determined to depart down to a 120 month "Guideline" based on the combination departure.  See Tr. at 79/6-17 and 103/20-23.  It then considered that departed guideline sentence as one of the § 3553(a) factors in reaching a post-Booker sentence.  Id. at 42/9-18.

As the transcript reflects, the court was clearly aware of the Booker decision, and the need to consider all the § 3553(a) factors.  It is the court's recollection that it understood its discretion, within a reasonable application of all the § 3553(a) factors, to sentence Evans to the term of imprisonment the court determined was fair and just.  The sentence imposed was expressly described as a "departed guidelines sentence" and "fair and just" post-Booker under § 3553(a).

To fully respond to the Circuit's remand, this court must address the crack disparity issue.  As stated in Regalado, until Kimbrough the Second Circuit tended to discourage district courts from deviating from the crack cocaine guidelines.  518 F.3d at 147.  This court was aware of that pre-Regalado case law when it was sentencing Evans.  Thus, this court did not consider the crack disparity in determining its sentence.  In other words, the district court understood it could impose–and it did impose–a sentence "at odds with" the sentence called for by the drug guideline and career offender guideline (168-210 months).  The court understood that the guidelines were then advisory only.  However, in arriving at what it thought was a reasonable, and fair and just, sentence of 120 months, while it definitely fully considered all of the § 3553(a) factors, it did not consider the crack disparity reflected in the guidelines.  In considering

its sentence as a departed, guidelines sentence, it was departing from the defendant's career offender guidelines. See U.S.S.G. § 4B1.1(b)(stating if the offense level for a career offender is greater than the offense level otherwise applicable, then the career offender offense level shall apply). In determining the 120 month sentence as a Booker sentence, it did not consider the disparity between crack and powder present in the guidelines drug table. It did, however, determine 120 months to be a fair and just sentence under § 3553(a).

This court does not presume, as the defendant requests,[5] to consider if its sentence of 120 months would be different if it had considered the crack disparity. The Court of Appeals has not directed this court to address that issue and has not directed this court to resentence Evans.

### III.    CONCLUSION

For the reasons stated herein, it is clear to the court that at the time it was sentencing Evans, the court understood its discretion to impose a non-guidelines sentence. This is so because the court did, in fact, impose a non-guidelines sentence. However, the court did not consider the "crack disparity" either in determining a departure from the defendant's guidelines or his Booker sentence.

---

[5] Defendant's Post-Remand Mem. at 5-7 (Doc. No. 2222).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of January, 2009.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge